Williams v. O'Rourke Please proceed Mr. Kelly. Good morning and may it please the court. Above all may it please the Lord that it be shown today that the 1985 decision did contain clear and unmistakable error. The 2015 decision was nothing if not arbitrary and capricious and the Veterans Court most certainly misinterpreted 38 CFR 3.326 which was in direct contradiction to the plain language which says that it does apply to any claim for disability compensation or pension whether it be an original claim, a reopened claim or one for increase. Did you argue 3.326 below or did you argue really 3.327? We argued both Your Honor. Both before the board and at the Veterans Court we argued that Mr. Williams of course the VA failed to provide an examination. We know this. But why? Why wasn't he given an examination? And the answer is because the VA believed that they had already provided an examination. 3.326 says it applies to any claim. A Veterans Administration examination must be afforded in any disability claim. They had an examination. They had these hospital records from August 6th to August 10th and they said this is our examination for a seizure disorder. The claim is now complete and then they proceeded with the denial. The problem is that examination was not valid by their very own statutes which explain what an examination is and what it must contain. And these records, this patient intake form completely fell short of what a valid examination would be. And at that point the regulation 19.182 required that the case be remanded which it was not. The failure to provide an examination is clear. But that's not the basis of the Q challenge. The Q challenge is based on the why. Why wasn't the examination ordered? And the reason is because they thought they had an examination already. They weren't going to provide an examination. This is a claim that was submitted and denied the same month. It was reopened and continued the denial the same month. They believed that this intake form, these progress notes would satisfy their requirement for an examination and that they weren't going to provide any more examinations for Mr. William as related to a seizure disorder. So you're claiming that the VA should have ordered an examination back in 1985? They didn't order the medical examination in 1985 that you're arguing that they should have, is that right? That is an effect that flows from what we're really arguing and that is that they misapplied the regulation. But the harm is that your client didn't get a medical examination in 1985, is that right? And the truth, yes, but the harm being that he wasn't given the same rights that someone should have received in his position had the regulation been followed. I mean, isn't it true that any time the VA fails to order a medical examination that it should have ordered, there was some underlying legal error in making that decision not to order a medical examination? Perhaps. However, the VA is far too broad in wishing to bring acute challenge under the guise of the VA's duty to assist and that was evidenced in those decisions. When no analysis was conducted to understand why this regulation was misapplied or why it was ignored and instead it was, if you're going to challenge anything about an examination, we're going to claim duty to assist and then they're going to, right afterwards, cite to this court's co-concern. And that's unfair to the acute challenge which says that by not following that statute, I'm sorry, by not following the regulations, that Mr. Williams did not get the proper administrative actions that he was afforded by law. And as a result, it most certainly manifestly changed the outcome of his appeal for the board. You say that, but the Veterans Court held Mr. Williams had not demonstrated he was prejudiced by failure to obtain this remedy. That's a fact finding. We can't review that. So, if the Veterans Court actually made a fact finding that the failure to have conducted an exam in this case did not prejudice your client, even if there was a failure to conduct an exam, we can't review that finding of prejudice because that's a fact finding and we don't have authority to review that. So, I don't see how you can meet the Q standard in light of that. Even if I agreed with you entirely on your regulatory interpretation argument, Q requires that there be an error that is outcome determinative and the Veterans Court expressly found, as a matter of fact, your client wasn't prejudiced by the failure to get an exam. It's a whole different issue than the one you're arguing now, but it equally resolves your case and I don't have the jurisdiction to look behind that determination. Your Honor, speaking about the Veterans Court decision, which was in plain misinterpretation of the statute, so to make a finding based on a misinterpretation. The finding that there wasn't prejudice in this case, that's different than their finding about what 3326 or 19.182 mean. They're saying even if. It's hard to imagine that they can make a determination based on a complete misinterpretation of the statute. Well, but they did and it's a question of fact. I don't get to review questions of fact. Should we hear from the government or is there anything else you'd like to say before your rebuttal? Okay, I'll reserve my time. Okay. Ms. Kaprowski. Good morning, Your Honors, and may it please the court. The Veterans Court made three distinct and independent holdings below. The first was that Cook bars this claim because as the court held on Bonk and Cook, a Q claim can never be based on a breach of the duty to assist. The second holding was that 3.326 and 3.3267 applies only to original claims. We don't disagree with Mr. Williams that 3.326A, subsection A, clearly applies to both reopened and original claims. But Mr. Williams did not argue that 3.326A applied. He only referenced 3.326C in his briefings in the Veterans Court below. And then the third independent holding, as Judge Moore was just pointing out, is that this case was not outcome determinative because Mr. Williams had failed to show prejudice. So the only claim over which this court could potentially exercise jurisdiction is the interpretation of 3.326, as Mr. Williams' claim has been wrongly interpreted. But even if you accept that that claim has been preserved, and even if you accept that the judge misinterpreted it in its decision, 3.326A requires that there must have been a reasonable probability that the claim for benefits, the medical claim, is connected to Mr. Williams' service. That was never argued to the Veterans Court, that the reasonable probability prong had been met. And contrary to my friend's assertions here, the board did not conclude that the reason it was not remanding for a VA examination was because it had already received one. Rather, it concluded that there was no reasonable doubt that Mr. Williams' seizure disorder, as diagnosed in 1982 and as presented in 1984 and 1985, was unrelated to his service. That factual preclusion just has never been at issue. It was finalized in 1985. It was never appealed. And even if the misinterpretation of 3.326A is in this court's jurisdiction at this point, it doesn't make any difference to the case because Mr. Williams cannot demonstrate the reasonable probability prong. If the panel has any questions, I'm happy to address them. Otherwise, we will rely on our briefs. Okay. Thank you. Mr. Kelly, you have rebuttal time. Thank you, Your Honors. The reason why Mr. Williams had to never demonstrate a reasonable probability is because in all of the administrative actions that had taken place, there was no sign whatsoever from the Secretary that they believed that there was no reasonable probability of a valid claim. Quite the contrary, they accepted the claim. Even though it was not adjudicated properly, they went through the adjudicated process. The Board made a decision in it. They made no mention of Mr. Williams not raising a reasonable probability of a valid claim. Again, the Board had a chance in 2015 to say that Mr. Williams has not raised the reasonable probability of a valid claim, and they did. And that's because it had been established that he had raised a reasonable probability. That's why they went ahead and adjudicated his claim. To say that he hasn't met a reasonable probability, after doing all that administrative action, it just doesn't seem to make much sense. However, if that's the Secretary's position, then they should be given that opportunity to explain that on remand. Because that most certainly would also be a finding that would have required them to explain the reasons and basis in the Board decision, which they did not. A manifestly different outcome in the context of Q refers to a determination on which the action was predicated. In this case, the decision, the action is a denial, of course. That was the action. Well, what are the determinations on that action? Well, they determined that the record was complete. They determined the record was correct, and they went ahead with an action, which is denial. However, if those determinations are different, if the record wasn't complete, if it wasn't correct, then that would require a different outcome. The Board has three possible outcomes ensuing from any Board hearing. You have a denial, a grant, and you have a remand. Of course, if you're granted, that's the end of the game. It's over and you get what you want. If it's denied, you have judicial review. If remanded, you have the opportunity to add more evidence to the record. All three of those outcomes do not share anything in common. There are no similarities between the three. And it seems quite clear that it would be manifestly different between three outcomes that share no similarities. The government's position with regard to Mr. Williams is inherently weak for one good reason. They've never dealt fairly with Mr. Williams. Mr. Williams is a real person. He is a U.S. citizen. He's a U.S. Army veteran. He served honorably. He is 100% service-connected for PTSD, not from trauma from the enemy, not from combat, but solely from the pure racism of his commanders. The commanders in his United States Army drove him to a mental breakdown. And the government knows that he's 100% service-connected because of it. For them to say that in 1982, a year or two, three years after, he's leaving service, that there's just nothing wrong with him at this point, yet in 2001, they service-connect him and relate it specifically to the racist treatment he suffered while in service, is infuriating. Mr. Williams deserved to have his claim adjudicated properly. It was not. Our Q challenge did not make a difference one way or another whether he got an examination. It doesn't matter whether they gave it to him or not. We know they failed in giving the exam. Why did they fail? They thought they had an examination on file. The regulations said they have to have an exam. They said, we have an exam. Denied. The VA is required to follow their own regulations. And if they had not met their own laws, then they were required to remand the case. They did not. And it amounts to a clear and unmistakable error. Thank you. I thank both counsel for their argument. The case is taken under submission.